IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | Criminal No. 3:11cr080-JAG |
| | ) | |
| FRANCIS CURTIS DAVIS, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA**

Neil H. MacBride, United States Attorney for the Eastern District of Virginia, and Angela Mastandrea-Miller, his Assistant United States Attorney, hereby files its response in opposition to Defendant's Motion to Withdraw Guilty Plea, and in support thereof, states as follows:

**INTRODUCTION**

**Underlying Facts**

This case relates to two robberies that took place on July 27, 2010 at a Game Stop store in Petersburg, Virginia, and on July 30, 2010 at a Subway Restaurant in Petersburg, Virginia. In both cases a black male fitting the description of the defendant, brandished a firearm and demanded money from the clerk. During the Game Stop robbery, the suspect brought a game to the counter, and when he was asked how he would pay for it, the suspect told the clerk that it was a robbery. He added that the clerk was not to say anything to anyone or someone would get shot. During the Subway robbery, the suspect took a drink from the cooler, and approached the clerk. When the clerk asked what the suspect wanted to eat. The suspect/defendant answered nothing, and then proceeded to the register, pointed a handgun at the clerk, and ordered the clerk

not to make a sound. The clerk, who was in fear for her life, gave the suspect/defendant all of the money in the cash register. After receiving money from the clerk, the individual ran from the store and got into a gold car with nice rims.

Another employee of the Subway Restaurant called 911, and provided a description of the vehicle the defendant was observed getting into. Moments later, a police car responded to the 911 call for assistance, and got behind the gold car as it left the area. The subway employee advised the 911 operator that the employee could see the police car behind the car that the robber had gotten into. Although the police officer activated his emergency equipment, the gold vehicle would not stop. After activating the siren, the suspect vehicle sped up to approximately 55 miles per hour, and made an abrupt right turn onto Whitehill Court in Prince George County, Virginia. The suspect vehicle drove 55 miles per hour in a 20 mile per hour zone. By this time, Prince George County police officers joined in the pursuit of the gold car. The suspect vehicle proceeded southbound, and then made a slight left turn into the Swader's Golf parking lot. The driver continued to the end of the parking lot. When the vehicle stopped (hitting another vehicle in the process), the defendant, who was the passenger in the car, ran out of the vehicle. The defendant continued to run toward the golf driving range, while the driver ran toward a wooded area. As officers gave chase, an officer, along with two civilian witnesses, observed the defendant throw a handgun to the ground. Shortly after he threw the handgun, the defendant lay down on the ground. He was placed under arrest by a Prince George County Police Officer. A loaded, stolen firearm was recovered from the ground, and a beverage container sold by Subway Restaurants was observed on the passenger seat.

The firearm that was recovered from the ground was a Keltec Model P-32, .32 caliber semi-automatic pistol loaded with 7 rounds of ammunition. The firearm was submitted to the Virginia Department of Forensic Science, and it was found to be in mechanical operating condition with the safety feature functioning properly.

### **Federal Robbery and Firearms Charges and Defendant's Guilty Plea**.

On March 23, 2011, Davis was charged in a five-count indictment, which included two counts of robbery, two counts of brandishing a firearm during and in relation to a crime of violence, and one count of possession of a firearm by a convicted felon.  An arrest warrant was issued, and on November 4, 2011, the defendant was appointed counsel, and on November 10, 2011, he was arraigned on the charges set forth in the criminal indictment.  A jury trial was scheduled for January 18, 2012.  On November 21, 2011, the defendant filed a Motion to Suppress Evidence, specifically challenging the incriminating statements the defendant made to law enforcement regarding his involvement in the two robberies. Although the United States advised the Court that it did not intend to use the statements in its case in chief at trial, and asked the Court to deny the motion as moot, on December 16, 2011, the Court granted the defendant's motion to suppress without hearing evidence or argument of counsel.

While the defendant's Motion to Suppress was pending before the Court, but before the Court had scheduled a hearing in that matter, the defendant filed a *pro se* Motion to Appoint Counsel, and a Motion to Waive Right to Speedy Trial and Relocate Defendant to Other Facility on November 29, 2011.

On December 8, 2011, the United States filed its response to the Motion to Suppress, and further, provided Notice of the penalty provisions associated with the charges.  Specifically, the United States noted that the first firearm charge in the indictment carried a penalty of 25 years to

life, to run consecutive to whatever sentence would be imposed for the robbery, if the defendant was convicted, and that the second robbery carried a penalty of an additional 25 years to life to run consecutive to that term if the defendant was convicted of the second firearm charge due to the fact that the defendant was previously convicted of possession of a firearm in furtherance of a crime of violence.

On December 16, 2011, the Court granted the defendant's Motion to Suppress, and after speaking with the defendant, regarding his Motion to Appoint Counsel, agreed to allow the defense an additional period of time to file further motions. Based on the Court's granting of additional time to file motions, the defendant indicated to the Court that he was satisfied with his Counsel, and he no longer wished to have new counsel appointed.  The Order reads: "The defendant advised that this schedule modification resolves his concerns with his current counsel." (see Docket Entry 17 at page 1).

On Monday, January 9, 2012, the United States made a plea offer to the defendant which allowed him to plead guilty to one of the robbery charges (count 3) and possession of a firearm by a convicted felon (count 5) in exchange for an agreed upon sentencing recommendation of 20 years, thereby reducing the defendant's potential term of incarceration *by over 30 years* if he were convicted of just the two 924c charges, as set forth in counts two and four of the criminal indictment, at trial.  Counsel for the defendant conferred with his client, and the following day notified the United States that the defendant had agreed to accept the plea offer. On January 11, 2012 the United States provided a non-cooperating Plea Agreement and Statement of Facts to the defense, and a plea hearing was scheduled before this court on January 13, 2012.

On the morning of January 13, 2012, the defendant came before the Court to enter a plea, at which time he indicated that he no longer wished to accept the plea offer. The United States advised the Court that numerous witnesses had been subpoenaed to trial, and that several victim witnesses were going to have to come to Richmond, Virginia from out of state, and indicated to the Court that it was prepared to proceed to trial, and opposed any further continuances, as the case was scheduled for trial in just 5 days with victim witnesses coming to Court from out of state.

After being given an additional, and ample opportunity to confer privately with his attorney regarding the plea offer, the defendant reconsidered and agreed to accept the plea offer. Approximately one hour later, the defendant entered a plea of guilty to the Subway Restaurant robbery charge (as charged in count three), and to possession of a firearm by a convicted felon (as charged in count five), in exchange for a joint recommendation of 20 years, and dismissal of the remaining counts in the Criminal Indictment at sentencing.

The defendant entered into a written plea agreement, and signed an agreed upon Statement of Facts.  He admitted, under oath, that he had committed the crimes charged in Counts three and five of the criminal indictment.

Significantly, during the plea colloquy, the defendant advised this Court that he was satisfied with his attorney's representation and that the defendant has made his own decision to enter a plea of guilty. The defendant further stated that he had neither received any promises in exchange for his plea of guilty (beyond that which was set forth in the plea agreement), nor had anyone threatened him in anyway to enter the guilty plea.  The sentencing hearing was scheduled for May 8, 2012, at 10:00 a.m., and a sentencing guideline order was entered that same day.

On March 9, 2012, nearly two months after having entered into his guilty plea, Davis, filed a Motion to Withdraw Guilty Plea, claiming that the plea he had entered into was involuntary. The motion contains numerous complaints regarding his attorney's performance, and cites to the Court's advice that he carefully consider his decision. All of this illustrates that Davis is upset that he is facing imprisonment on the robbery and firearm charge. However, the defendant admitted *under oath*, and in the signed plea agreement filed with the Court, and reviewed in relevant part with the defendant and his counsel by this Court, that the defendant had in fact **consulted with his attorney** and **fully understood all of his rights** with respect to the pending Criminal Indictment, agreed that **he had carefully reviewed every part of the plea agreement with his attorney**, that he **understood the plea agreement**, and that he **voluntarily agreed** to it.  (See Docket Entry 19, Plea Agreement, page 11, paragraph "Defendant's Signature.")

In addition, counsel for the defendant signed the Plea Agreement and stated that he, too, had  "...carefully reviewed every part of this plea agreement with the defendant ... [T]o my knowledge, **the defendant's decision to enter into this agreement is an informed and voluntary one**.  (See Docket Entry 19, Plea Agreement, page 11,l paragraph "Defense Counsel Signature.")

Furthermore, the defendant also admitted his guilt as set forth in the signed Statement of Facts, and he specifically stated under oath that he had committed both offenses that he was pleading guilty to on January 13, 2012.  In the Statement of Facts the defendant's signature appears below the paragraph that reads:  "I have **consulted with my attorney** regarding this Statement of Facts.  **I knowingly and voluntarily agree that each of the above-recited facts is true and correct and** that had this matter gone to trial **the United States could have proven**

6

**each one beyond a reasonable doubt."** Thus, the defendant's motion to withdraw his plea, filed some seven weeks later, which indicates that he wanted to maintain his innocence is completely unsupported by the facts of this case.

For the reasons below, the defendant's request to withdraw his guilty plea should be denied.

## LEGAL ANALYSIS

The Fourth Circuit has made it clear that a defendant has no absolute right to withdraw a guilty plea. *See generally United States v. Lambey*, 974 F.2d 1389 (4th Cir. 1992); *United States v. DeFreitas*, 865 F.2d 80 (4th Cir. 1989); and *United States v. Haley*, 784 F.2d 1218 (4th Cir. 1986). However, under Federal Rule of Criminal Procedure Rule 11(d)(2)(B), a district court may grant a motion to withdraw a guilty plea before a defendant is sentenced, provided the defendant shows "a fair and just reason for requesting the withdrawal." *United States v. Ubakanma*, 215 F.3d 421, 424 (4th Cir. 2000); *United States v. Pitino*, 887 F.2d 42, 46 (4th Cir. 1989). In considering this issue, the district court has broad discretion in deciding whether to allow a defendant to withdraw a guilty plea. *United States v. Craig*, 985 F.2d 175, 178 (4th Cir. 1993); *Pitino*, 887 F.2d at 46. The defendant has the burden of justifying his reasons for withdrawal, and if the district court denies a request, it will be reversed only for an abuse of discretion. *Ubakanma*, at 424; *Pitino*, at 46.

The Fourth Circuit has outlined six factors to be considered when deciding whether to allow a defendant to withdraw a plea of guilty:

1) whether the defendant provided credible evidence that his plea was not knowing or voluntary;

2) whether the defendant credibly asserted his legal innocence;

7

    3)       whether there was delay between entering the plea and moving for withdrawal;

    4)       whether defendant had the close assistance of competent counsel;

    5)       whether withdrawal will prejudice the government; and

    6)       whether the withdrawal will inconvenience the court and waste judicial resources.

*United States v. Moore*, 931 F.2d 245, 248 (4th Cir. 1991). The first, second, and fourth of the *Moore* factors carry the most weight in these considerations, as they concern whether the defendant has a good reason to "upset settled systemic expectations." *United States v. Sparks*, 67 F.3d 1145, 1154 (4th Cir. 1995).

As recognized above, the burden of establishing a fair and just reason for withdrawing a guilty plea rests with the defendant. Davis falls well short of meeting his burden. The following analysis of the above guidelines shows that all six factors weigh heavily against allowing a withdrawal of guilty plea in this case. Accordingly, Davis' request should be denied.

**1.**    **Evidence that Plea was not Knowing or Voluntary (Factor 1).**

Davis cannot point to any shred of evidence that his plea was either unknowing, involuntary, or both. During the guilty plea colloquy on January 13, 2012, this Court took great pains to make sure the defendant was entering his plea knowingly and voluntarily, without being influenced by any threats or coercion. The plea colloquy covered whether the defendant understood the process, the charges, the penalties, operation of the sentencing guidelines, and what he was waiving by pleading guilty. He further affirmed his satisfaction with his attorney's representation and his actual guilt to the charges set forth in the plea agreement. In fact, throughout the entire guilty plea hearing, Davis gave no indication that anyone had threatened him or made any promises to induce his guilty plea. Rather, the defendant affirmed that he decided that a guilty plea was in his best interest.

Although Davis has decided to complain about his attorney, the posture of the case refutes his position. Specifically, the defendant's attorney filed a Motion to Suppress, and was prepared to proceed to trial on the scheduled date. In addition, the defendant was fully aware that the United States and the defense were jointly recommending a 20 year sentence, and this Court indicated to all parties that it was inclined to accept the recommendation.

Overall, the guilty plea colloquy[1] completely discredits Tucker's vague claim that he did not enter a knowing and voluntary plea. This factor weighs heavily against the defendant being allowed to withdraw his guilty plea.

### 2.  Whether Defendant Credibly Asserted his Legal Innocence (Factor 2).

Davis makes no assertion of legal innocence in his Motion to Withdraw Plea of Guilty. He merely states that he told his counsel that he was "adverse [sic] to pleading guilty" and told his attorney of his "ardent desire to prove his innocence at trial." However, the defendant, under oath, asserted that he was in fact guilty of the charges and affirmed that the factual allegations stated on the record were true and correct during the plea colloquy. Simply put, Davis' request fails under this factor.

### 3.  Delay Between Guilty Plea and Motion for Withdrawal (Factor 3).

Davis waited nearly two months before advising this Court of his change of heart regarding his guilty plea. He pled guilty on January 13, 2012, and waited until March 6, 2012, to write his motion (which was filed on March 9, 2012). If he was actually troubled because of his attorney's representation, or somehow felt he was railroaded into admitting his guilt, he would

---

[1] On April 10, 2012, the United States requested a copy of the plea colloquy be ordered. It is anticipated that this transcript will be available within 10 days. The United States will supplement this filing with the plea hearing transcript as Government Exhibit 1 as soon as it is received.

have taken action immediately. The nearly two month delay here is more indicative of a case of "second thoughts" about what the defendant has knowingly done. *See United States v. Moore*, 931 F.2d 245, 248 (4th Cir. 1991) (finding that a 6 week delay weighed against withdrawal of a guilty plea); *United States v. Carr*, 740 F.2d 339, 345 (5th Cir. 1984) (concluding that motion was not promptly filed when defendant waited 22 days after guilty plea; in support the court reasoned "[t]he rationale for allowing a defendant to withdraw a guilty plea is to permit him to undo a plea that was unknowingly made at the time it was entered. The purpose is not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty."). Accordingly, this factor also weighs very heavily against allowing Davis to withdraw his plea.

### 4. Whether Defendant Had the Close Assistance of Competent Counsel (Factor 4).

Davis' Motion asserts that he received ineffective assistance of counsel in connection with this case and, more specifically, his guilty plea. In order to establish a fair and just reason to withdraw a plea based on ineffective assistance of counsel, a defendant must demonstrate "(1) that his counsel's performance fell below an objective standard of reasonableness and (2) that he was prejudiced in the sense that there was a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial."*Lambey*, 974 F.2d 1394 (internal quotation marks, alterations and citation omitted). A review of Mr. Gunlick's representation in this case shows that Davis' claims must fail on both fronts.

First, Mr. Gunlicks is an experienced criminal defense lawyer and this Court is well aware of the vigor and tenacity with which he has represented this client. Throughout this entire case, Mr. Gunlicks put his skills to good use and effectively represented the defendant as

illustrated by the Motion to Suppress filed in this case, which this Court granted. In that motion, attorney Gunlicks argued that the statements that the defendant made were made in violation of his rights pursuant to *Miranda.* He marshaled a thorough argument in support of this, illustrating his mastery of the applicable case law bearing on the issue. (See Docket Entry 10 and 11, Defendant's Motion to Suppress and Memorandum in Support.)

In fact, this Court expressly commented on the effectiveness of Mr. Gunlick's representation with regard to the Motion to Suppress on the record, noting that counsel for the defendant had won the Motion without having to offer any oral argument in support of the motion.

Furthermore, at the conclusion of the suppression hearing, this Court allowed Davis to speak to the Court regarding his concerns about his attorney. After Davis indicated that his concern was that he wanted his attorney to have more time to file any additional motions that may be relevant to his case, the Court granted this request. After giving the defense an additional ten days within which to file further motions, the defendant indicated that he was satisfied with his attorney, and wished to keep him as counsel. (See transcript of December 16, 2011 Motions Hearing, and Docket Entry 17, Order denying Motion to Appoint New Counsel.)

The guilty plea colloquy also discredits the defendant's disagreement with his attorney's representation. During the plea hearing, Davis unequivocally affirmed that he was satisfied with the legal representation that he had received from Attorney Gunlicks, and that his attorney had complied with every reasonable request in handling this case. (See Guilty Plea transcript, Exhibit 1 to be filed as a supplemental exhibit.)

Overall, the record is clear. Davis received effective representation at each phase of this case. He cannot establish that his attorney's representation fell below an objective standard of

11

reasonableness or that he would have proceeded differently absent his counsel. Therefore, this factor also weighs heavily against the defendant.

### 5. Prejudice to the Government and Waste of Judicial Resources (Factors 5 & 6).

Aside from the difficulty associated with preparing for trial, and the considerable amount of time that has passed since Davis entered his guilty plea, the United States would point out that five of the victims and/or civilian witnesses necessary in this case are now residing in other states. It is unfair to the victims and witnesses to ask them to undergo the stresses associated with preparing to testify at trial, then learn that they are no longer needed for trial, and then backtrack and call upon them to testify yet again after months have passed. In this respect, the United States would in fact suffer undue prejudice if the defendant's request were granted. Additionally, if this matter proceeded to trial, it would likely require two to three days to conclude the case. Considering the expense and time accompanying such a trial, allowing the defendant to withdraw his plea would substantially waste judicial resources, as well. Accordingly, the sixth factor also weighs against allowing Davis to withdraw his guilty plea.

## **CONCLUSION**

Based on the foregoing points and authorities, and the facts of this case, the defendant cannot establish a fair and just reason for requesting the withdrawal. It is clear that the defendant in fact entered into a knowing and voluntary plea of guilty, has not asserted actual innocence, waited nearly two months to request the withdrawal of his guilty plea, and had the close assistance of competent counsel throughout all proceedings in this case. In addition, the granting of his motion would prejudice the United States and waste judicial resources. The United States respectfully requests that defendant's Motion be denied.

                                  Respectfully Submitted,

                                  NEIL H. MacBRIDE
                                  United States Attorney

By: _____/s_____
                                  Angela Mastandrea-Miller
                                  Assistant United States Attorney
                                  United States Attorney's Office
                                  600 East Main Street, Suite 1800
                                  Richmond, Virginia 23219
                                  Telephone: 804-819-7403
                                  Email: Angela.Miller3@usdoj.gov

## Certificate of Service

The undersigned hereby certifies that on April 11, 2012, the foregoing was filed with the Clerk of the Court using the ECF filing system, which will send notification of such filing to:

>Michael B. Gunlicks, Esq.
>Counsel for Defendant Davis
>604 N. Boulevard
>Richmond, VA 23220
>Phone: 804-355-9700
>Email: michael@gunlickslaw.com