United States District Court
Eastern District of Virginia
Richmond Division

United States of America

v.

Francis C. Davis,

Defendant

Case No. 3:11CR0080

# Defendants Motion to Dismiss Indictment

Comis Now Francis C. Davis, Defendant, Pro se to respectfully move this Court to dismiss the Indictment, set aside sentencing requiring the goverment to respond to this motion pursuant to Fed. Rules Crim. P. 4(b)(1)(c) and 5.1(2), the Due Process Clause of the fourth and fifth Amendments of the U.S. Constitution, the Speedy Trial Clause of the sixth Amendment of the U.S. Constitution, Fed. Rules Crim. P. Rule 48(b)

Francis C. Davis, Defendant, Pro se

NNRJ

P.O. BOX 1060

Warsaw Va 22572

United States District Court
Eastern District of Virginia
Richmond Division

United States of America
v.
Francis C. Davis
Defendant

Case No. 3:11CR0080

Brief in support of Motion for Dismissal of the Complaint, the Indictment Counts 1-5 and Inquiry by this Court into Prosecutorial Misconduct resulting from Collusion between Federal and State Officials violating the defendants rights protected by the fourth, fifth and six amendments of the United States Constitution

COMES Now the defendant, Francis C. Davis, Pro SE pursuant Federal Rules of Criminal Procedure Rule 5(a)(1)(A), the Due Process Clause of the fifth amendment (USCA. Const. Amend 5) the fourth and sixth Amendments of the United States Constitution (USCA. Const. Amend 4; USCA. Const. 6) to respectfully move this Court to dismiss Counts 1-5 based on Speedy trial denial, pre Indictment delay, violations of the defendants Initial proceedral rights to prompt presentment and to hold an official Inquiry into Prosecutorial misconduct resulting from Collusion between

Federal and State Officials to gain a tactical advantage in this matter and in support there of pleads as follows:

I. Factual Background

1 - On July 30, 2010 the defendant is Arrested and Charged by Colonial Heights Police Department for 1) Robbery 2) Use of A FireArm by a Convicted Felon 3) Possesion of a FireArm by A convicted Felon 4) Possesion of A Concealed weapon (The alleged Robbery occurred at Subway Restaurant located at 1062 Temple Ave. Colonial Heights Va)

2 - On July 31, 2010 Petersburg Police Department issued warrants (for A Robbery that allegedly occurred at Game Stop located at 3330 South Crater rd, Petersburg Va) 1) Robbery 2) Use of A FireArm by A convicted Felon 3) Possesion of A FireArm by A Convicted Felon 4) Possesion of A concealed weapon.

3 - Between the dates of July 30, 2010 and November 15, 2010 the defendant was Arraigned, Appointed Counsel and proceeded to several preliminary hearings that were Continued due to the State of Virginias inability to secure any witnesses to establish probable cause at these hearings.

4 - Between the dates of November 12 and 15 the cities of Colonial Heights and Petersburg moved to Nolle Prosequi All charges based on the Federal Goverment issuing A warrant for the defendants Arrest on November 12, 2010 [ note: Defendant has requested from Counsel for the defendant, David R. Lett, all or any relevant information concerning the dates and events of the State of Virginias prosecution of the defendant

to provide Accuracy as well as to investigate collusion between Federal and State Authorities to no avail. Counsel for defendant refused this request as well as contacting Counsel that represented defendant during the States prosecution. Counsel also refused to file this and any subsequent motions thus prompting the defendant to file Pro Se ]

5 - On November 12, 2010 Complaint filed by T. Flemming, Special Agent, Richmond I Field Office [3:10-Mj-00588-DWD], warrant of Arrest issued for Francis C. Davis for possession of a firearm by a convicted felon. The defendant is detained at Riverside Regional Jail in Hopewell, Va for federal authorities as of November 15, 2012 As the last of the States charges were Nolle prosequi on that date.

6 - March 23, 2011 - Indictment as to Francis C. Davis, Counts 1-5
1) Robbery affecting Commerce 2) Robbery affecting commerce 3) Use, Carry, Display Possess and Brandish a firearm in relation to a crime of violence 4) "
5) Possession of A firearm by a convicted felon

7 - Arrest warrant issued on March 23, 2011

8 - November 4, 2011 arrest warrant issued, Appointment of Counsel Michael Ben Gunlicks signed by District Judge John A Gibney Jr.

9 - November 7, 2011 Writ of Habeas Corpus issued to Warden, Fairfax County ADC 10520 Judicial dr. Fairfax Va 22030 to surrender Francis C. Davis

10 - November 9, 2011 Transferred from Fairfax ADC to Northern Neck Regional Jail,

11 - November 10, 2011 Arraigned on Charges set forth in Criminal Indictment Counts 1-5, Trial date set for January 18, 2012

12 - December 16, 2011 hearing held following defendants Pro Se letter/motion expressing concerns and requesting New counsel. Court orders extension of deadlines for pre-trial motions, Motion for New Counsel denied

13 - January 13, 2012 defendant enters guilty plea, sentencing scheduled for May 8, 2012

14 - March 9, 2012 defendant files for appointment of New Counsel and Withdrawal of guilty plea

15 - Hearing on Motions for New Counsel, defendants motion granted, Courts appoints David R. Lett

16 - Hearing on Motion to withdraw guilty plea, motion denied, sentencing date scheduled for July 11, 2012

17 - June 21, 2012 Counsel for defendant David R. Lett, after being made aware of Constitutional issues (to be addressed herein) that have gone unnoticed resulting from previous Counsel's multiple errors in failing to raise these issues, refuses to file relevant motions requested by defendant.

## II. Argument

### A. Collusion between Federal and State Officials resulting in Prosecutorial Misconduct

Paragraphs 1-17 are hereby incorporated by reference.

The defendant submits that Virginia state officials between the dates mentioned herein (see para. 3) subjected the defendant to the pre trial phases of a prosecution that stalled, plagued by lack of evidence in material witnesses negative identifications of the defendant and the like. Subsequent to several continuances at the preliminary phase the state of Virginia moved to Nolle Prosequi all charges in light of arrest warrant issued for the defendant by federal authorities (see para. 5) thus suspending prosecution on the state level.

While state officials generally are encouraged by the Federal Government in local responsibilities in law enforcement ~~and that~~ they (~~state~~ officials) are best equipped to handle these local responsibilities at some point following the realization that state officials were in the face of a dismissal based on not being able to establish probable cause at the preliminary stage contacted Federal Authorities as a means to manipulate and circumvent these local responsibilities.

The defendant submits that there is a General Catergory of Crimes which the state is best equipped to handle such as the crimes the defendant was originally charged with. While "As broadly as extension of interstate Commerce requirement has spread for purposes of Hobbs Act Government is still Federal and not Unitary Government."

What if any policies or rules of law act to govern or prevent violations of "fundamental conceptions of justice which

lie at the base of our civil and political institutions" Mooney v. Holohan 294 U.S. 103, 112, 55 S.Ct. 340, 342, 79, L.Ed 791 (1935) and define "the community's sense of fair play and decency" Rochin v. California supra, 342 U.S., at 173, 72 S.Ct. at 210 Subjecting the defendant to harsher penalties, withholding exculpatory evidence through presentment delay, the unconstitutional delay between arrest and arraignment (U.S.C.A. Const. Amend 4), the deliberate attempt to delay trial in order to hamper the defense methodically sidestepping prompt determination of probable cause thus avoiding the same pitfall state officials encountered, all part of the tactical advantage gained by the government resulting from a working arrangement between local and federal authorities where the custom practice of local authorities is to drop local charges when and where it suits state prosecutions that have failed.

Is there not a Compelling Reasons" determination prior to the commencement of a federal prosecution? What if any "compelling reasons" prompted the Federal Authorities to pursue a Federal prosecution in the middle of a state prosecution? "The Department of Justice Petite Policy against multiple prosecutions for the same act is applied most frequently against duplicating federal-state prosecutions. More importantly" This policy is useful to the efficient management of limited executive resources and encourages local responsibility in law enforcement but it also serves the purpose of protecting citizens from unfairness that is associated with succesive prosecutions based on the same conduct." Petite v. US 361 U.S. 529, 530, 80 S.Ct.

450, 451 4L.Ed.2d 490 (1960) Cleary 'the efficient management of limited resources' and encouraging of 'local responsibilities takes a backseat when state and federal agencies stand to gain some tatical advantage or attempt to avoid less favorable outcomes in local courtrooms.

The defendant moves this Court respectfully to investigate and examine the collusive practices and working arrangements between the United States Attorneys Office and in this particular, but not limited to, the Colonial Heights and Petersburg state prosecutors Office. The defendant submits that to turn a 'blind eye' to these tactics and practices and the defendants allegations herein would 'fly in the face' of judicial fairness and efficiency.

The defendant further moves this Court to dismiss the Indictment following a thorough Inquiry, terminate the governments prosecution and return this matter to the state of Virginia thus encouraging local responsibilities in law enforcement. In conclusion the alleged crimes sum at stake was not so large that there was a cumulative effect on interstate commerce to prompt a federal investigation or prosecution while in reality the alleged crimes caused speculative substantial indirect effects on interstate commerce and clearly falls into the general category of crimes which the State of Virginia is best equipped to handle.

B. Presentment Delay

Federal Rules of Criminal Procedure Rule 5(a)(1)(A) states, "A person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge."

The defendant submits that ..."the term 'delay' presumes an obligation to act, there can be no 'delay' in bringing a person before a federal judicial officer until there is some obligation to do so in the first place. Such a duty does not arise until the person is arrested or detained for a federal crime." U.S. v. Alvarez-Sanchez 511 U.S. 350, 114 S. Ct. 1599 U.S. 1994 It is clear that the obligation for prompt presentment began the moment State officials Nolle Prosequi State charges (see para. 4-5) and detained the defendant on a warrant of arrest issued on November 12, 2010 (see para. 5)

The defendant further submits that any person arrested and held on a Federal charge by any law enforcement officer federal, state or local is under "arrest or detention for purposes of Rule 5(a)(1)(A) [As in contrast any person arrested or detained only on state charges by state or local authorities the provision of Rule 5 is not triggered] Because 'delay' is not defined in the statue, we must construe the term 'in accordance with it's ordinary and natural meaning' FDIC v. Meyer 510 U.S. 471, 476, 114 S.Ct 996, 1001, 1272 L.Ed. 2d 308 (1994) To delay is "to postpone until a later time" or to "put off an action"; a delay is a delay in bringing a person before a federal magistrate until at minimum there is some obligation to bring such a person before such

A judicial officer in the first place. Plainly a duty to present a person to a federal magistrate does not arise until the person has been arrested for a federal offense. See Fed. Rule Crim. Proc. 5(a) Until a person is arrested or detained for a federal crime there is no duty, obligation, or reason to bring him before a judicial officer empowered to commit persons charged with offenses against the laws of the United States." US. v Alvarez-Sanchez

As the record clearly indicates the defendants initial appearance for arraignment occurred a year after the first of several arrest warrants was issued (see para. 5; 7; 8) and the defendant was arrested and detained by local authorities after local charges were Nolle prosequi in this matter. This delay violated the defendants fourth Amendment right to prompt determination of probable cause USCA CONST. AMEND. 4 "This delay also violated the defendants right to the complaint against the defendant and any affidavit filed with it as well as the defendants right to retain counsel or to request that counsel be appointed if the defendant cannot obtain counsel, pretrial release and any right to a preliminary hearing. Fed. Rules of Crim. Proc. Rule 5(d)(1)(A)-(F)

"The defendant submits that the delay and failure to present the defendant to a federal magistrate denied the defendant All of the integral initial proceedural rights thus violating the defendants Due Process rights protected by the fifth Amendment USCA. CONST. AMEND. 5 "The prompt presentment requirement is not

just an administrative nicety. It dates back to common law. Under Rule 5 presentment is the point at which the judge must take several KEY steps to foreclose Goverment overreaching e.g. informing the defendant of the charges against him and giving the defendant a chance to consult with counsel" Corley v. U.S 556 U.S. 303, 129 S.Ct. 1558

'Presentment streches back to the Common law when it was one of the most important protections against unlawful arrest' County of Riverside v. Mclaughling 500 U.S. 44, 61-62, 111 S.Ct. 1661, 114 L.Ed 2d 49 (1991)

The defendant submits that the government knowing and intentionally diverted and avoided a prompt presentment through unnecessary delay in order to gain a tactical advantage in avoiding a preliminary hearing to establish probable cause while the defendant was detained four months prior to indictment (see para. 6) This tactical advantage includes, but is not limited to, the gathering of additional evidence and witnesses to justify the arrest and to postpone the beginning of a defense investigation.

It is safe to say that Federal Authorities inherited the same obstacles state authorities experienced in their failed effort to present probable cause at the state level preliminary hearing thus establishing motive for a tactical delay to avoid presentment. For a years time the government methodically delayed, avoided, sidestepped and violated the prompt presentment requirement of Fed. Rules of Crim. Proc. Rule 5

If the Supreme Court held that delay for purposes of interogation is the epitome of "unnecessary delay" what does a tactical delay in the face of Rule 5 requirements to gain the advantage of denying the defendant the opprotunity to investigate and locate an eyewitness that would be able to provide exculpatory evidence in terms of identifying the true culprit of the crimes the defendant is accused of. This particular eyewitness, who the defendant did not become aware of until discovery sometime in December, 2011, referred to as 'the lady' (see Incident Report City of Colonial Heights pg. 4 of 5; Officer Fullerton 8-1-2010) who was present at the scene prior to, during and after the alleged Robbery the defendant is accused of. [ In Request for Regional Broadcast from Colonial Heights (para. 2, 4.) this witness is described as: A black female described as short with a ponytail and wearing all black clothing entered and exited the business without conducting any transaction.... It is unknown how she fled the scene..... The Suspects were identified as :.... the female has not been identified ' Aug 2, 2012 Note: In the Criminal Complaint filed on 11-12-2012 by Special Agent T. Flemming this witness is conveniently removed from his narration, and all subsequent narrations, of the events that occurred on July 30, 2010 ]

The defendant has been unable to locate this witness who would serve as an exculpatory witness to add to the multiple negative identifications of the defendant as well as lead authorities to the true perpetrator of these crimes. It is clear that during the year and months local and federal authorities were privileged to this

information they made no attempt to locate such a key witness to the events that occurred on July 30, 2010.

In conclusion the unnecessary delay in bringing the defendant before a judicial officer empowered to commit persons charged with offenses against the laws of the United States denied the defendant the right to procedural safeguards as Justice Frankfurters expressed in McNabb 318 US 350, 114 S.Ct 1599 US 1994 'The History of liberty has largely been the history of observance of procedural safeguards' 'The prompt presentment requirement under Rule 5 is not an 'administrative nicety' Corley v. US that can be manipulated or ignored for the convenience or to impair the defense "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay the prejudice is obvious" Barker v. Wingo 92 S.Ct. 2182 (1972)

The ultimate responsibility for 'delay' and the circumstances that resulted rest with the goverment rather than with the defendant and any deliberate attempt to hamper the defense should weigh heavily against the goverment leading the defendant to move the Court respectfully to give further examination into the Constitutional violations mentioned herein including but not limited to determining whether defendant's right to speedy trial was violated contravening the sixth amendment of the United States Constitution.

C. Speedy Trial Clause Violation

The defendant submits that The Sixth Amendment right to a speedy trial attached to the defendant no earlier than November 12, 2010 and no later than November 13, 2010 following the issuing of an arrest warrant for the defendant resulting in the Nolle prosequi of all relevant state charges and the defendant being detained by local authorities for a federal crime pending transfer to federal authorities for adjudication (see para. 4, 5) Following the federal authorities made no efforts of any kind to obtain the defendant and failed to take the slightest step to procure a temporary release and a prompt hearing until November 7, 2011 (see para. 7-9) approximately a year later.

The defendant further submits that "actual prejudice to the defense of a Criminal case may result from the shortest and most necessary delay" United States v. Lovasco at 790, 97 S.Ct. 2044 (1977) and "the lower Courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approches one year." Doggett v. U.S at 652, 112 S.ct. 2686 (1992) n. 1. See W. Lafave & J. Israel, Criminal Procedure §18.2, p. 405 (1984); Joseph, Speedy Trial Rights in Application, 48 Ford. L. Rev. 611, 623, n. 71 (1980) (citing cases) 'and it simply marks the point at which Courts deem the delay unreasonable enough to trigger the Barker Inquiry cf. Uviller, Barker v. Wingo: Speedy Trial gets A fast Shuffle, 72 Colum. L. Rev. 1376, 1384-1385 (1972) while The First Circuit held in US v. Butler 426 F. 2d. 1275, 1277 (1970) that a delay of nine months was overly long absent a good

reason, in a case that depended on eyewitness testimony such as the case that is before this Court.' The United States Court of Appeals for the 2nd Circuit has also promulgated rules for the district Courts in that Circuit establishing that the government must be ready for trial within six months of the date of arrest. This type of Rule is also recommended by the American Bar Association' Barker v. Wingo and quoting Circuit Judge Tamm, U.S. Court of Appeals, District of Columbia Circuit "I would now undertake to adopt just such a one year rule. I would calculate this period from the date on which the formal charge against the defendant is brought in cases where the defendant is in custody on that date..... No longer can we sit by and watch unconscionable judicial verbiage. The time has come for us to clean our own house before looking to the evils that lie beyond." United States v. Dunn 459 F.2d 1115 (1972)

The defendant submits that 'the length of delay' that will provoke such an inquiry (as the Barker Inquiry), (while) is necessarily dependent upon the particular circumstances of the case in this instant has been satisfied. 'To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious complex conspiracy charge.' Barker v. Wingo at 531 This 'length of delay' is the exact triggering mechanism for the remaining three Barker factors.

As to 'the reason for the delay it is clear the government was not hampered by means of transportation or distance to

the nearest Magistrate, (an approximate 30 minute distance from Riverside Regional Jail, Hopewell, Va to the United States District Courthouse locate in Richmond, Va.) nor can claim (the existence of a bona fide emergency or any other extraordinary circumstance to excuse the period between arrest, detainment and arraignment which spanned a year. The defendant submits that the burden of proof as to the governments reason for denying the defendant a probable cause determination hearing, his initial procedural rights all resulting from this 'delay' lies exclusively with the government. The defendants Contention herein throughout is that this delay was deliberate and that 'any deliberate attempt to delay trial in order to hamper the defense should be weighed heavily against the government in determining whether the defendants right to speedy trial has been denied.' Barker v. Wingo; USCA. CONST. AMEND. 6

The defendant submits further that he had '...no duty to bring himself to trial'... and that the government 'has that duty as well as the duty of insuring that the trial is consistent with due process.' Barker v. Wingo at 527 In light of the Constitution this 'delay' was unjustifiable and unexplainable in the face of the Federal Rules of Criminal Procedure, the case law and the entire historical and jurisprudential commitment to the concept of the speedy dispensing of justice.

The defendant submits that as a result of the length of delay he was denied the opprotunity the government

afforded to itself for a year in being able to consult with Counsel as the defendant stood in need of appointment of Counsel by this Court to become aware, to demand and assert this right.

The defendant moves this Court to balance the circumstances presented herein if it weighs a failure to demand with the ineffective assistance of Counsel while the defendant submits that a purposeful or oppressive delay may overcome a failure to demand. Despite an absence of demand the denial of a speedy trial can be found under circumstances such as these. see Bandy v. U.S. 408 F.2d 518 (CA8 1969)

The Court has defined waiver as 'an intentional relinquishment or abandonment of a known right or priviledge' Johnson v. Zerbst 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1177 (1937) The defendant submits that he has not intentionally relinquished or abandoned his right to a speedy trial while not being made aware or advised as to the violations of this and several Constitutional rights extending from the multiple prejudices of previous counsels ineffective assistance of counsel and the abandonment of current counsel. Quite simply 'a man should not be presumed to have exercised a deliberate choice because of silence or inaction that could equally mean he is unaware of the necessity for a demand' NOTE, The Lagging right to a Speedy Trial, 51 Va L. Rev. 1587, 1610 (1965) (footnotes omitted) In Carnley v. Cochran 369 U.S. 506, 82 S.Ct. 889, 8 L.Ed 2d 70 (1962) The Supreme

Court held

"Presuming waiver from a silent record is impermissible The record must show or there must be an allegation and evidence which show that an accused was offered Counsel but intelligently and understandably rejected the offer. Anything less is not a waiver" Id. at 516, 82 S.Ct. at 890

The Supreme Court has ruled similarly with respect to waiver of other rights designed to protect the accused see Miranda v. Arizona, 384 U.S. 436, 475-476 86 S.Ct. 1602, 1628-1627, 16 L.Ed. 2d 694 (1966) Boykin v Alabama 395 U.S. 238, 89 S.Ct 1709, 23 L.Ed. 2d 274 (1969) and further stated that the Courts should indulge every reasonable presumption against waiver' and that 'they should not presume acquiescence in the loss of fundamental rights.' Barker v. Wingo citing Aetna Ins. Co. v. Kennedy 301 U.S. 389, 393, 57 S.Ct. 809, 812, 81 L.Ed. 1177 (1937); Ohio Bell Tel. Co. v. Public Utilities Comm'n 301 U.S. 292, 307, 57 S. Ct. 724, 731, 81 L.Ed. 1093 (1937) The defendant reasserts that Constitutional principles places the primery burden on the Courts and the prosecutors to assure that cases are brought to trial and further that the defendant has no duty to bring himself to trial and that "the right to a speedy trial is constitutionally guaranteed and as such is not to be honored only for the vigilant and the knowledgable" Hodges v. U.S. 408 F.2d 543, 551 (CA8 1969)

The defendant submits that the fourth factor to be addressed 'should be assessed in light of the intrests of defendants

which the speedy trial right was designed to protect.' Barker v. Wingo at 532 that is "1.) to prevent oppressive pretrial incarceration 2.) to minimize anxiety and concern of the accused and 3.) to limit the possibility that the defense will be impaired by dimming memories and loss of exculpatory evidence.

Of these forms of prejudice "the most serious is the last because the inability of a defendant adequately to prepere his case skews the fairness of the entire system." Barker v. Wingo at 532.

The defendant submits that his arrest, while the government failed to assert probable cause by violating the initial procedural rights of the defendant to such a hearing as Rule 5 of the Federal Rules of Crim. Proc. states, has interfered with his liberty, disrupted his employment, drained his finacial resources, curtailed his associations, subjected him to public obloquy, and created anxiety in him, his family and his friends, all extending from the public act of arrest, see United States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 463 30 L.Ed.2d 468 (1971) and oppressive pretrial incarceration

As to 'the most serious' of these factors the defendant has shown herein and throughout that the 'delay' weakened his ability to raise specific defenses, elicit specific testimony (e.g. witness mentioned herein, pages 11-12) and further submits the inability to obtain due to this delay specific items of evidence such as the surveilance footage from the alleged robbery in Colonial Heights that has conveniently disappeared becoming unrecoverable through

discovery providing substantial exculpetory evidence to support eyewitnesses negative identifications of the defendant while protecting the defendant from the irreparable in Court misidentification of witnesses with dimming memories at trial as it approached two years from the alleged Crime.

These prejudices may be attributed to governmental negligence while Barker has made it clear that "Although negligence is obviously weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal procecution once it has begun. Doggett v. U.S. at 657, 112 S.Ct. 2686 (1992)

The defendant submits that from the many prejudices he has suffered the attorney for the defendant as an officer of the Court has a responsibility to expedite trials and not only as a result of failing to point or raise these Constitutional issues promptly in the defendants defense does not remove the responsibility for the following of Procedural safeguards. This failure by counsel for the defendant occurred, as did these violations addressed herein, prior to the plea agreement and should therefore not be considered as a waiver of these fundamental rights but should be considered the furtherance of prejudice the defendant has suffered from the ineffectiveness of counsel.

It may be argued that the defendant by pleading guilty has waived any right to the claims or protections mentioned

herein. The record supports the defendants efforts, pro se, to withdraw the guilty plea citing ineffective assistance of Counsel and Fed. Rule of Crim. Proc. Rule 11 (c)(1) It is the contention of the defendant that he has breached the agreement and that "any alleged breach of this agreement by either party shall be determined by the Court in an appropriate proceeding .... and at which the moving party shall be required to establish a breach of the plea agreement by a preponderance of the evidence." Plea Agreement, pg. 9; para 3

The defendant submits that this Court has within it's discretion prior to imposing sentence to allow for the withdrawal of the guilty plea in light of 'fair and just' reasoning (see Fed. Rule of Crim. Proc. Rule 11 (d)(2)(b)) stemming from the facts presented within this brief while the defendant submits he has reached new heights concerning fair and just reasoning as this agreement is unconstitutional in the sense that it protects the government from accountability before this Court and furthers the defendants claim in that these constitutional issues should have been raised by Counsel for the defendant, Michael B. Gunlicks, months prior to this agreement.

## D. Conclusion

In Klopfer v. North Carolina at 223-226, 87 S.Ct. at 993-995 Mr. Chief Justice Warren went to great lengths in setting out the historical perspective of an accused's right to a speedy trial and the fundamental rights secured by the Sixth Amendment

In Klopfer he stated, "We hold here that the right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment. That right has its roots at the very foundation of our English law heritage. Its first articulation in modern jurisprudence appears to have been made in Magna Carta (1215).... but evidence of recognition of the right to speedy justice in even earlier times is found in the Assize of Claredon (1166).... Sir Edward Coke wrote in part II of his Institutes," have not suffered the prisoner to be long detained, but at their next coming have given the prisoner full and speedy justice... without detaining him long in prison." To Coke, prolonged detention without trial would have been contrary to the law and custom of England; but he also believed that the delay in trial, by itself, would be an improper denial of justice..... Coke's Institutes were read in the American Colonies by virtually every student of law. Indeed, Thomas Jefferson wrote that at the time he studied law (1762-1767) "Coke Lyttleton was the elementary book of law students. And to John Rutledge of South Carolina, the Institutes seemed "to be almost the foundation of our law. To Coke, in turn Magna Carta was one of the fundamental bases of English liberty. Thus it is not suprising that when George Mason drafted the first of the colonial bills of rights, he set forth a principle of Magna Carta, using phraseology similar to that of Coke's explication: "[I]n all capital or criminal prosecutions," the Virginia Declaration of Rights of 1776 provided, "a man hath a right... to a speedy trial."

This fundamental right has a clearly established

history yet as Circuit Judge Tamm states, "(it is) All too frequently paid only token lip service by the Courts." United States v. Dunn 459 F.2d 1115 (1972) The quoting of Mr. Chief Justice Warren at length is in hope of renewing the historical perspective of the Sixth Amendment guarantee.

"The defendant submits that," If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint." Rule 48(b) Fed. R. Crim. P.

The defendant moves this Court to remedy the deprivation of this fundemental right by a dismissal of the indictment as "it is the only possible remedy" Barker v. Wingo at 522 Clearly the governments deliberate delay as it has prejudiced and harmed the defendant while being purposeful and oppressive is unjustifiable. In Williams v. United States, 102 U.S.App.D.C. 51, 250 F.2d 19 (1957) it was determined that the defendant had been denied his right to a speedy trial after spending a year in St. Elizabeths Hospital and six years in prison. In Smith v. Hooey 393 U.S. 374, 89 S.Ct. 575, 21 L. Ed. 2d 607 (1969) the Supreme Court held that the right to a speedy trial would apply even to a defendant imprisoned in another jurisdiction. In Taylor v. United States, 99 U.S.App.D.C. 183, 238 F.2d 259 (1956) a three year delay in issuing an indictment while defendant was in a New York prison was held to be violative of basic Con-

-stitutional rights, while in Coleman v. United States 142 U.S. App. D.C. 402, 442 F.2d 150 (1971) in light of the fact that the defendant could no longer find all of his witnesses and a delay of 21 months due to his incarceration in Maryland the indictment was dismissed and his conviction reversed.

The defendant submits that the abuses in these cases, as well as the abuses mentioned herein, "are evident to even the most untrained and the least sensitive of observers but an abuse need not be offensively blatant in order for the Court to take notice." United States v. Dunn

Further the defendant submits that the government when charged with a criminal prosecution and deliberately chooses to proceed outside the bounds established by the Constitution must be held accountable for treading so heavily upon the rights our Republic in its embryonic stage designated to safeguard the populace from the type of tyrannical rule that spawned a Revolution sought to free a fledgling nation.

The defendant submits the Due Process Clause of the 5th Amendment requires dismissal of an indictment if it is shown that the pre-indictment delay caused actual prejudice to the accused and that the government intentionally delayed the indictment to gain a tactical advantage. The defendant has shown and satisfied the prejudice clause and moves this honorable Court to dismiss the indictment and or hold an inquiry into the intentional delays the defendant has mentioned herein.

Wherefore the defendant prays that this honorable Court dismisses the indictment and or grants A continuance requiring the government to respond to this motion and or hold the appropriate hearing, and that the defendant be granted such other and further relief as this Court deems appropriate.

Respectfully submitted, this 11th day of July, 2012

Francis C. Davis, Pro SE

Francis Curtis Davis
NNRJ
P.O. Box 1060
WArSAW Va 22572