IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.                                                               Criminal Action No. 3:11cr80

FRANCIS CURTIS DAVIS
(a/k/a Abdul-Malik Lbnfrancis As-Salafi),
         Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on remand from the Fourth Circuit, (ECF Nos. 136, 140), and the defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), (ECF No. 122).[1] The defendant requests compassionate release for various reasons including: (1) his "exceptional work in his prison community"; (2) his need to care for his mother due to her declining health; and (3) subsequent changes in the law related to his firearm conviction. (ECF No. 122, at 1, 8, 14; *see also* ECF No. 147, at 1; ECF No. 162, at 7–11.) The government opposes the defendant's motion. Because the defendant presents an extraordinary and compelling reason for relief and the sentencing factors support a modest reduction in his sentence, the Court will **GRANT** his motion *IN PART*.

The Court will **REDUCE** the defendant's sentence to 180 months or fifteen years' imprisonment and **INCREASE** his term of supervised release to five years.[2]

---

[1] The Court has considered the entire original record as well as the Opinion of the Fourth Circuit, (ECF No. 136), the defendant's pro se supplemental brief, (ECF No. 146), the defendant's first supplemental memorandum, (ECF No. 147), the government's response in opposition, (ECF No. 160), the defendant's reply, (ECF No. 162), the defendant's second supplemental memorandum, (ECF No. 167), and all accompanying exhibits.

[2] Although the phrase compassionate release appears to confine the scope of available relief to immediate release from prison, a court may, after finding that a defendant has met the statutory requirements of § 3582(c)(1)(A)(i), grant any reduction to his sentence. *See, e.g., United States v.*

## I. **BACKGROUND**

In July 2010, the defendant robbed a Subway restaurant in Colonial Heights, Virginia at gunpoint. After a high-speed car chase, police arrested the defendant.[3] On March 23, 2011, the grand jury indicted the defendant for robbery affecting commerce (Counts One and Three), using, carrying, displaying, possessing, or brandishing a firearm in relation to a crime of violence (Counts Two and Four), and possession of a firearm by a convicted felon (Count Five).[4] (ECF No. 3.) On January 13, 2012, the defendant pleaded guilty to Counts Three and Five. (ECF Nos. 18, 19.) In exchange, the government moved to dismiss the three remaining charges. Pursuant to the plea, the parties recommended that the Court impose a total sentence of twenty years' imprisonment.[5] (ECF No. 19, at 3.)

Prior to sentencing, the Court calculated the defendant's sentencing guidelines range as 110–137 months for robbery and 110–120 months for possessing a firearm as a convicted felon.

---

*Arey*, 461 F. Supp. 3d 343, 344 n.2 (W.D. Va. 2020); *United States v. Guess*, 576 F. Supp. 3d 370, 2:10cr140, 2021 WL 6049455, at *5 n.1 (E.D. Va. Dec. 21, 2021) (explaining that "[a]lthough motions under 18 U.S.C. § 3582(c)(1)(A) are colloquially known as compassionate 'release' motions, the statute's text states that a court 'may reduce the [defendant's] term of imprisonment'" and that "§ 3582(c)(1)(A) does not require a court to choose between granting immediate release and granting no relief at all" (emphasis and alteration in original)). Accordingly, if a court finds that the defendant is eligible for relief under § 3582(c)(1)(A)(i), it may order his immediate release, reduce his sentence to any lesser term of imprisonment consistent with the § 3553(a) sentencing factors, or add a term of supervised release.

[3] During police questioning, the defendant confessed to both the Subway robbery and the armed robbery of a Gamestop store in Petersburg, Virginia on July 27, 2010.

[4] The defendant's prior felony convictions included robbery, use of a firearm in relation to a crime of violence, grand larceny from the person, and credit card fraud. (ECF No. 101, at 29–37.)

[5] Notably, the parties recommended twenty years, in part, because the penalties for dismissed Counts Two and Four included consecutive mandatory minimum sentences of twenty-five years to life. (*See* ECF No. 41, at 1–2.)

2

On July 11, 2012, the Court adopted the parties' recommendation and sentenced the defendant to 240 months' imprisonment followed by three years of supervised release. (ECF No. 48.) The sentence consisted of 240 months for the robbery and 120 months for the felon in possession charge, to be served concurrently. (*Id.*)

## II. **PROCEDURAL HISTORY**

In February 2020, the defendant filed a pro se motion seeking compassionate release. (ECF No. 92.) Upon preliminary review of that motion, the Court appointed an attorney to represent the defendant, and on January 25, 2021, counsel filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). (ECF No. 122.) In his motion, the defendant sought immediate release based on his exemplary accomplishments while incarcerated, his mother's declining health, and an alleged defect in his firearm conviction based on *Rehaif*[6] and *Gary*.[7] The government opposed the defendant's motion for compassionate release, citing, among other things, the defendant's failure to exhaust his administrative remedies as required by 18 U.S.C. § 3582(c).

On June 7, 2021, the Court denied the defendant's motion.[8] (ECF No. 132.) The defendant

---

[6] *Rehaif v. United States*, 139 S. Ct. 2191, 2197 (2019) (holding that a conviction under 18 U.S.C. § 922(g) requires "knowledge of [the] status" that renders firearm possession unlawful).

[7] *United States v. Gary*, 954 F.3d 194, 202 (4th Cir. 2020) (finding that the district court erred when it accepted the defendant's plea without informing the defendant of all the elements the government needed to prove), *rev'd*, *Greer v. United States*, 141 S. Ct. 2090, 2100 (2021) (concluding that "a *Rehaif* error is not a basis for plain-error relief unless the defendant first makes a sufficient argument or representation on appeal that he would have presented evidence at trial that he did not in fact know he was a felon").

[8] In its decision, the Court assumed without deciding that the defendant had exhausted his administrative claims. The Court then found that evidence of rehabilitation and a parent's illness were not extraordinary and compelling reasons for compassionate release, and that even if the defendant's firearm conviction was vacated under *Rehaif*, the defendant's overall sentence would not change. Finally, the Court determined that, even if the defendant had presented extraordinary and compelling circumstances for release, the § 3553(a) factors did not support his release in light of the seriousness of his offenses and his significant criminal history.

appealed that denial to the Fourth Circuit, and on January 13, 2022, the Fourth Circuit vacated this Court's decision and remanded the case for further proceedings. (ECF No. 136.) The Fourth Circuit directed that this Court should consider the "totality of [the defendant's] post-sentencing conduct, the ill health of his mother, and the potential voiding of one of his convictions" in determining whether to grant compassionate release. (*Id.* at 4.) Noting that evidence of post-sentencing rehabilitation *alone* does not rise to the level of an extraordinary and compelling reason, (*see* ECF No. 136, at 3 (citing *United States v. McCoy*, 981 F.3d 271, 286 n.9 (4th Cir. 2020)), the Fourth Circuit explained that "successful rehabilitation efforts can be considered as 'one among other factors,'" (*id.* (quoting *McCoy*, 981 F.3d at 286 n.9)). Further, the court indicated that a parent's ill health may, depending on the individual circumstances, amount to an extraordinary and compelling reason for release. (*Id.* (citing *McCoy*, 981 F.3d at 284–87).)

Regarding the defendant's firearm conviction, the Fourth Circuit found that "th[is] court failed to consider that the existence of a possibly void conviction could potentially provide extraordinary and compelling reasons." (*Id.* at 3.) Finally, the appellate court determined that this Court "appeared to rely solely on [the defendant]'s past criminal history and did not consider the new and significant 'evidence of post-sentencing mitigation that would be relevant to the § 3553(a) factors' when it evaluated his motion." (*Id.* at 7 (quoting *United States v. Martin*, 916 F.3d 389, 397 (4th Cir. 2019).)

On remand, the parties filed supplemental briefing with the Court. The defendant provides information about his mother's worsening health and financial problems. For its part, the government maintains that the defendant failed to exhaust his administrative remedies, that he does not present extraordinary and compelling reasons for release, and that the § 3553(a) factors do not support his release. Accordingly, the government asks the Court to deny the defendant's motion

again.

Upon reexamination of the entire record and due consideration of the defendant's exceptional and well-documented record of post-sentencing conduct, the Court now finds that the defendant has met the substantial burden of demonstrating that he is entitled to relief. Accordingly, for the reasons addressed below, the Court will GRANT his motion IN PART.

### III. DISCUSSION

#### A. *Compassionate Release Standard*

Pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, a district court may reduce a criminal defendant's sentence if it finds that "'extraordinary and compelling reasons warrant such a reduction'[9] . . . and if the [18 U.S.C.] § 3553(a) sentencing factors merit a reduction." *McCoy*, 981 F.3d at 275 (4th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). "[P]rior to the First Step Act, courts could consider compassionate release only upon motion by the BOP." *Id.* at 276. Today, however, § 3582(c)(1)(A) allows a defendant to file a motion for compassionate release on his own behalf after he has "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Congress did not define extraordinary and compelling reasons in § 3582(c)(1)(A). "Instead, the Sentencing Commission . . . addressed the issue in a policy statement, United States Sentencing Guideline § 1B1.13." *McCoy*, 981 F.3d at 276. Before the passage of the First Step

---

[9] Absent extraordinary and compelling reasons, a district court may still modify a defendant's sentence if "the defendant is at least 70 years of age, has served at least 30 years in prison" for a sentence imposed under 18 U.S.C. § 3559(c), and the Director of the Bureau of Prisons ("BOP") has determined "that the defendant is not a danger to the safety of any other person or the community." 18 U.S.C. § 3582(c)(1)(A)(ii). These circumstances do not apply to the defendant.

5

Act, § 1B1.13 advised the BOP to consider compassionate release if a defendant's claim fell into one of four categories of "extraordinary and compelling reasons," including specific scenarios pertaining to a defendant's "medical condition, health and age, and family circumstances." *Id.* But following the passage of the First Step Act, the Sentencing Commission failed to update § 1B1.13 to account for motions filed by defendants. *Id.* at 281. As a result, the policy does not bind courts presented with a defendant's motion for compassionate release.[10] *Id.* at 281–84. Accordingly, the Court may "consider *any* extraordinary and compelling reason for release that a defendant might raise." *Id.* at 284 (emphasis in original) (quoting *United States v. Brooker*, 976 F.3d 228, 230 (4th Cir. 2020)). Even if a defendant presents an extraordinary and compelling reason for relief, a Court may not reduce a defendant's sentence unless it also finds that the § 3553(a) factors support a reduction. The Court must be mindful, however, of "the requirement that [it] conduct [an] individualized inquir[y]" and assess a defendant's sentence in light of his post-sentencing conduct. *Id.* at 288. In other words, the Court must evaluate the defendant as he comes before the Court today.

### *B. Analysis*

#### *1. Administrative Exhaustion*

"By its plain language, § 3582(c)(1)(A) requires defendants to first exhaust administrative remedies or wait thirty days after requesting that the warden of their facility file a motion for a sentence reduction." *United States v. Feiling*, 453 F. Supp. 3d 832, 837 (E.D. Va. 2020). The parties disagree about whether the defendant exhausted his administrative remedies prior to filing his motion with the Court. (*See* ECF No. 122, at 8; ECF No. 130, at 11–12; ECF No. 160, at 4.)

---

[10] Nevertheless, the Fourth Circuit has advised that § 1B1.13 "remains helpful guidance." *Id.* at 282 n.7.

Because the exhaustion requirement is non-jurisdictional, courts in this district have found that it "may be waived [if] . . . : (1) the relief sought would be futile upon exhaustion; (2) exhaustion via the agency review process would result in inadequate relief; or (3) pursuit of agency review would subject the petitioner to undue prejudice." *Casey v. United States*, No. 4:18cr4, 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020). The defendant contends that he filed a motion with the BOP in December 2019, more than thirty days before he filed his original motion. (ECF No. 122, at 8.) Even if this is not so, however, the Court finds that forcing the defendant to pursue BOP review now would "subject the [defendant] to undue prejudice." *Casey*, 2020 WL 2297184, at *1.

The proceedings in this matter have persisted since February of 2020, (*see* ECF No. 92), and the parties have thoroughly briefed the issues both pre- and post-remand. (*See* ECF Nos. 122, 124, 130, 131, 146, 147, 149, 160, 162.) Requiring the defendant to file a petition with the BOP now would waste scarce judicial resources and the defendant's time. *See Casey*, 2020 WL 2297184, at *1. Indeed, because the defendant need only file a petition and wait thirty days before bringing the action again before this Court, sending him back to the BOP would, in practice, serve only to wipe the slate clean for thirty days and restart the litigation from square one. *See United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021) ("[T]he threshold requirement in § 3582(c)(1)(A) is non-jurisdictional and satisfied if a defendant requests the [BOP] to bring a motion on their behalf and *either* fully exhausts all administrative rights to appeal the B[OP]'s decision *or* waits 30 days from the date of their initial request to file a motion in the district court." (emphasis in original)). Thus, the Court waives the administrative exhaustion requirement to the extent is it not met and proceeds to the merits of the defendant's claims.

2. *Extraordinary and Compelling Reasons*

The defendant asserts that his "significant rehabilitation[] [and] his extraordinary work in

7

federal prison" constitutes extraordinary and compelling reasons for release. (ECF No. 147, at 1.) Though "[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason" for compassionate release, 28 U.S.C. § 994(t) (emphasis added), the Court now finds that *this* defendant's post-sentencing conduct exceeds mere rehabilitative efforts, (*see* ECF No. 136, at 4). The defendant's participation on the FCI Bennettsville COVID-19 Sanitation Crew, his work as an inmate representative for the Sunni Muslim community, and his teaching as a GED tutor reflect a pattern of intentional service to his fellow prisoners. Such dedication to the betterment of himself and others, particularly in light of the defendant's family situation, constitutes extraordinary and compelling circumstances warranting relief. *See United States v. Henriquez*, 1:15cr225-1, 2021 WL 5771543, at *5 (M.D.N.C. Dec. 6, 2021) (noting that the defendant's "unusually deep efforts at successful rehabilitation, his work ethic, the support of a significant number of B[O]P employees with personal knowledge of his situation, his family circumstances" and the length of his sentence combined showed extraordinary and compelling circumstances).

*i. Rehabilitation, Post-Sentencing Work, and Family Circumstances*

During his eleven years in prison, the defendant has participated in traditional rehabilitation efforts, like completing a drug abuse class. (*See* ECF No. 122-1, at 1–2.) But he has also gone above and beyond by becoming a leader and educator for his prison community. Most notably, FCI Bennettsville staff selected the defendant as the sole COVID-19 sanitation crew member for the prison's Education Department. (ECF No. 122-3; *see also* ECF No. 122, at 8–9; ECF No. 147, 6–7.) The defendant willingly assumed the role and, in doing so, accepted some "measure of peril from the virus" because of his belief that "his responsibilities [were] important to the safety of his prison and fellow prisoners." (ECF No. 122, at 9.) The defendant's efforts have not been in vain: during his entire time sanitizing the department, no staff member of the Education Department has

contracted COVID-19.[11] (ECF No. 147, at 6.) The Court received a letter from D. Ridges, a teacher at the prison, praising the defendant's "exceptional work ethic" and dedication to "the safety of the department." (ECF No. 122-3.) Indeed, the Department Head and Chief Executive Officer of the Education Department, Leslie Black, submitted a monetary special award recommendation on behalf of the defendant for his exceptional service to the prison. (ECF No. 147-3.) Black credits the defendant as "instrumental in keeping the Education [D]epartment clean." (*Id.*) Notably, the defendant has performed his sanitation work while also assisting the Education Department staff with their daily duties. (*Id.*) Black writes that he "keeps files up to date and orderly for the teachers and has helped [her] with the passing out of all the library books to the whole inmate population." (*Id.*) Rarely has the Court received such evidence of support from BOP personnel detailing the accomplishments of a defendant.

Besides his sanitization work, the defendant has sought out other opportunities to support his fellow inmates. For example, he "takes particular pride in being an inmate representative for the Sunni Muslim community" and serves as the Imam for the prison.[12] (*Id.*) In that role, the defendant "instruct[s] classes, including . . . the first Islamic reentry course, deliver[s] sermons, and creat[es] courses and curriculum for study." (*Id.*) He also acts as a "religious service reentry clerk." (*Id.*)

In addition to his religious activities, the defendant also mentors other inmates and "serves as a GED and Adult Continuing Education Program tutor." (*Id.*) Teacher D. Ridges writes that the defendant "suggested and implemented a new approach to the current curricula that accelerated

---

[11] "The Education Department at [FCI] Bennettsville[] is the only department that has remained COVID-Free for the duration of the pandemic." (ECF No. 122-3.)

[12] The defendant maintains a relationship with the local Imam in Norfolk, Virginia and plans on continuing that contact post-incarceration. (ECF No. 122, at 10.)

the graduation rate in [the prison's] GED Literacy Program." (ECF No. 122-3.) He also "voluntarily initiated a study hall after programming hours for individual GED student needs." (*Id.*) Besides GED courses, the defendant teaches adult continuing education classes, including "Introduction to Arabic, Intermediate and Advanced Arabic," and the "Transition Back Into Society" class. (*Id.*)

Further, the defendant has demonstrated his dedication to the safety and wellness of his prison community by, among other things, "notifying staff members of his concerns with [another inmate's] radical [ideology]." (ECF No. 122, at 11–12.) Finally, the defendant has maintained a nearly infraction-free disciplinary record throughout his time in prison.[13] (*Id.*)

When combined with his exceptional work in prison, the defendant's family circumstances also present an extraordinary and compelling circumstance for relief. Courts have traditionally found that caring for a parent is not enough to constitute an extraordinary and compelling circumstance for early release. *See Henriquez*, 2021 WL 5771543, at *4 (noting that "a mere desire to assist an aging parent is not an extraordinary and compelling circumstance"); *United States v. Hooks*, 3:18cr59, 2021 WL 796156, at *3 (W.D.N.C. Mar. 2, 2021) (defendant's desire to care for his terminally ill mother did not constitute an extraordinary and compelling reason). Here, however, the defendant's desire to care for his mother does not stand alone.

The record before the Court demonstrates that the defendant's mother has several serious

---

[13] The defendant's record reflects that he was insolent toward a staff member on one occasion in 2018. (ECF No. 122-1, at 2.)

10

medical conditions[14] and faces financial instability[15] due in large part to the same pandemic her son has worked to control. Upon his eventual release, the defendant hopes to support her by utilizing the skills and work ethic that he gained while in prison.[16] Accordingly, the Court finds that the defendant's well-documented record of remarkable service to his prison community, particularly in light of the external stress and hardship of worrying about his ill mother, is both extraordinary and compelling.

### ii. Defect in Firearm Conviction

The defendant also contends that a change in the law regarding his firearm conviction provides an extraordinary and compelling reason for release. *See Rehaif*, 139 S. Ct. at 2197. Specifically, he asserts that his firearm conviction is invalid because his indictment did not contain, as an element, that he *knew* he was a convicted felon at the time of the offense. (ECF No. 147, at 7.)

When it originally considered the defendant's motion, this Court found that any effect of *Rehaif* on the defendant's firearm conviction did not amount to an extraordinary and compelling reason for relief because his "120-month sentence for possession of a firearm runs concurrently to his 240-month sentence for robbery." (ECF No. 132, at 6.) Thus, the court concluded that "even

---

[14] Medical records indicate that the defendant's mother "suffers from asthma, Type 2 Diabetes, hypertension, degenerative bone disease, and the need for shoulder surgery and knee replacement." (ECF No. 147, at 5; *see also* ECF No. 127; ECF No. 147-2, at 1–2; ECF No. 151-1.)

[15] The record reflects that she recently lost her job and is facing housing instability. (ECF No. 147, at 5; ECF No. 167; ECF No. 167-1.)

[16] For example, during his time as a head orderly prison, the defendant "learned about general janitorial services and [gained] floor maintenance[] skills which will be of great value to him upon his release." (ECF No. 122, at 10.)

if [the defendant] is correct that *Rehaif*... invalidate[s] his firearm conviction, his overall sentence would not change." (*Id.*) On appeal, the Fourth Circuit found that the Court "failed to consider that the existence of a possibly void conviction could potentially provide extraordinary and compelling reasons for release given the appropriate circumstances." (ECF No. 136, at 3.) This Court now acknowledges that circumstances may indeed exist where a possibly void conviction could amount to an extraordinary and compelling reason for release.[17] Nevertheless, the Court finds that, based on the facts of *this* case, *this* defendant's *Rehaif* argument does not supply an extraordinary and compelling reason for release.

The Court notes, as it did in June of 2021, that a motion under 28 U.S.C. § 2255 "provides the primary means of collateral attack on a federal sentence." *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (quoting *Cox v. Warden, Fed. Det. Ctr.*, 911 F.2d 1111, 1113 (5th Cir. 1990)); *accord Melton v. United States*, 359 F.3d 855, 857 (7th Cir. 2004). The Court will, however, briefly set aside the procedural defects in his claim and address the facts surrounding the defendant's *Rehaif* argument to further illustrate why it does not present an extraordinary and compelling reason for relief. In *Rehaif*, the Supreme Court held that a conviction under 18 U.S.C. § 922(g) requires "knowledge of [the] status" that renders firearm possession unlawful. *Rehaif*,

---

[17] For example, say the government charged a defendant with two offenses, and the defendant then pleaded guilty to both. Under these circumstances, the theoretical absence of either charge may have changed the Court's assessment of the defendant's overall criminal culpability at the time of his original sentencing and thus resulted in an overall lower sentence. This is so even if the Court ran the defendant's sentences concurrently to one other.
That is not the case before this Court. Here, the defendant faced four additional charges—including two counts of robbery and two counts of using a firearm during a crime of violence—two of which carried minimum consecutive twenty-five-year sentences. Thus, the absence of the defendant's felon in possession charge would not have meaningfully altered the Court's understanding of the defendant's culpability and dangerousness at the time of his original sentencing and it does not do so now, in retrospect.

139 S. Ct. at 2197. Thus, "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the [g]overnment must prove both that the defendant knew he possessed a firearm *and that he knew* he belonged to the relevant category of persons barred from possessing a firearm." *Id.* at 2200 (emphasis and alteration added). The Supreme Court explained, however, that the government's duty to prove a defendant's knowledge of his status is hardly "burdensome," because "knowledge [of status] can be inferred from circumstantial evidence." *Id.* at 2198 (quoting *Staples v. United States*, 511 U.S. 600, 615 n.11 (1994)).[18] In this instance, the record clearly establishes that the government could have easily demonstrated that the defendant knew of his prohibited status at the time of the offense. Prior to the present offense, the defendant was convicted of multiple felonies on multiple occasions for which he received sentences in excess of one year. (*See* ECF No. 101, at 30–37.)

Because the Court finds that the defendant's other arguments present an extraordinary and compelling reason for compassionate release, the Court must now consider whether the 18 U.S.C. § 3553(a) factors support a modification to the defendant's sentence.

### 3. *Section 3553(a) Factors*

Under § 3553(a), a district court must impose a sentence that is "sufficient, but not greater than necessary" to achieve certain goals.[19] 18 U.S.C. § 3553(a). The sentence must, among other

---

[18] Indeed, "[i]f a person is a felon, he ordinarily knows he is a felon" and "'[f]elony status is simply not the kind of thing that one forgets.'" *Greer v. United States*, 141 S. Ct. 2090, 2097 (2021) (quoting *United States v. Gary*, 963 F. 3d 420, 423 (4th Cir. 2020) (Wilkinson, J., concurring in denial of reh'g en banc)). Also, "[a] defendant considering whether to plead guilty would recognize as much and would likely factor that reality into the decision to plead guilty." *Id.*

[19] Based on the § 3553(a) factors, the Court has considered the record pertaining to (1) the defendant's sentence relative to the nature and seriousness of his offense; (2) his personal history and characteristics; (3) the need for a sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need to afford adequate deterrence; (5) the need to protect the public from further crimes of the defendant; (6) the need to

things, "reflect the seriousness of the offense, . . . promote respect for the law, . . . provide just punishment for the offense . . . [and] protect the public from future crimes of the defendant." *Id.* § 3553(a)(2). Section 3553(a) also directs the Court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." *Id.* § 3553(a)(1). When reviewing a motion for compassionate release, the Court must consider these factors in light of the defendant's post-sentencing conduct. *See United States v. McDonald*, 986 F.3d 402, 411–12 (4th Cir. 2021).

Although the defendant's original sentence is now greater than necessary to accomplish many of the goals of sentencing, society's interest in the defendant's continued incarceration is not wholly outweighed by the facts before the Court. *See United States v. Hargrove*, 30 F.4th 189, 197 (4th Cir. 2022). In short, the defendant has shown extraordinary and compelling reasons for a sentence reduction, but the § 3553(a) factors do not support his *immediate* release.

The defendant's crimes were incredibly serious. On July 30, 2010, the defendant entered a Subway Restaurant in Colonial Heights, Virginia, and pointed a loaded handgun at the clerk. The defendant then led the police on a high-speed chase. When police finally arrested the defendant, they recovered a semi-automatic pistol. Following his arrest, the defendant also confessed to a second armed robbery, committed only a few days prior. (ECF No. 101, at 9–10.) As the Court noted at the sentencing hearing:

> [The defendant] stole $232 from a Sub shop . . . [b]ut that doesn't make it a small thing because of the use of a firearm. It is terrifying to the people who are in the store. And it is a disaster waiting to happen, . . . [a]ll of a sudden there would have been wounded or dead people in the Subway store. So it is a very, very serious offense.

---

provide rehabilitative services; (7) the applicable guideline sentence; and (8) the need to avoid unwarranted sentencing disparities among defendants with similar records found guilty of similar conduct. *See* 18 U.S.C. § 3553(a)(1)–(6).

(ECF No. 58, at 32:3–12.) Further, the instant crimes were not the defendant's first robberies. (ECF No. 101, at 30–31.) Indeed, the defendant served a lengthy term of incarceration for a previous armed robbery and use of a firearm in relation to a crime of violence. (*Id.* at 31–32.) Following his release, he then twice violated his supervised release on those charges and was sent back to prison.[20] He finished his second revocation sentence only a little over a year before he committed the instant crimes. (*Id.*)

Further, despite ample evidence of his personal growth in the years since his conviction, the Court remains unconvinced that the defendant appreciates the seriousness of his actions. And although the defendant's desire to focus on his present and future is certainly understandable, his many filings before the Court do not provide any indication of his remorse for the real harm that he caused to the victims of his crimes.

Finally, the defendant's criminal history also weighs against granting him immediate release. The defendant's criminal history "includes 39 *prior* convictions spanning a 22-year period of time." (ECF No. 130, at 25 (emphasis in original); *see also* ECF No. 101, at 27–38.) Accordingly, the Court finds that a sentence of just over ten years is not sufficient to reflect the seriousness of the defendant's crimes, justly punish the defendant for them, or promote respect for the law.[21] *Id.* § 3553(a)(1)–(2)(B).

---

[20] The defendant violated his supervised release the second time "by failing to participate in substance abuse counseling, failing to follow the instructions of his probation officer, failing to work regularly, failing to notify his probation officer within 72 hours of being charged with, being arrested, or being questioned by a law enforcement officer, and commission of new crimes." (*Id.* at 35.)

[21] The Court also notes that such a reduction would also likely create a disparity between the defendant's sentence and the sentences imposed on other defendants of similar backgrounds convicted of similar crimes. 18 U.S.C. § 3553(a)(6).

Despite the serious nature of the defendant's actions and his prior criminal history, the Court finds that the defendant's personal characteristics counsel in favor of a sentence reduction. Indeed, the defendant's "unusually deep efforts at successful rehabilitation," particularly in light of his familial circumstances, demonstrate that he has grown into a responsible individual worthy of compassion and grace. *Henriquez*, 2021 WL 5771543, at *5. Beyond the significant evidence that the defendant is not internally the same person who stood before the Court in 2012, the Court notes that the defendant has sought out and acquired many of the tools which make successful reentry into society probable. For the defendant, those include the job skills that he gained through his teaching and janitorial work and a strong foundation in his faith and faith-community. The Court also notes that the defendant maintains a steadfast support system consisting of his mother, his child's mother, his local Imam, and his extended family. (ECF No. 122, at 10; ECF No. 122-4; ECF No. 147-2.) Accordingly, the Court finds that the defendant's original sentence is now longer than necessary to provide him with services, deter him from future criminal behavior, or protect the public from his future crimes.[22] *Id.* § 3553(a)(2)(C)–(D).

The Court's ultimate task is to craft a sentence that is "sufficient, but not greater than necessary" to accomplish the goals of sentencing. *Id.* § 3553(a). The Court finds that, considering the totality of the circumstances of the record before it, a sentence of fifteen years' imprisonment followed by five years of supervised release is called for by the sentencing factors but no greater than necessary.

---

[22] Although fifteen years is a lenient sentence given the nature of the defendant's crimes, his prior criminal history, and the benefit of the bargain he received pursuant to his plea, *see infra* n.4, the Court finds that such leniency under these circumstances is not likely to lessen the general deterrence value of his sentence. 18 U.S.C. § 3553(a)(2)(B). Further, the newly increased term of supervised release serves to ameliorate any lingering concerns regarding the need for future specific deterrence.

## IV. CONCLUSION

For the reasons stated herein, the Court will **GRANT** the defendant's motion **IN PART**, and **REDUCE** his sentence to a total term of **180 months' imprisonment**. This term of imprisonment consists of a term of ONE HUNDRED AND EIGHTY (180) MONTHS on Count Three and a term of ONE HUNDRED AND TWENTY (120) MONTHS on Count Five, all to be served concurrently. The defendant shall receive credit for any time served for these offenses.

Further, upon release from imprisonment, the defendant shall be on supervised release for a term of **FIVE (5) YEARS**. All other provisions of the judgment and restitution order dated July 11, 2012, (ECF Nos. 47–48), SHALL remain in effect.

The Court impresses on the defendant the unique opportunity he receives today. This is not merely a second chance. Rather, it is rare chance to make good on his human potential and to reward the many people who have supported both his reform efforts and his quest for sentencing relief.

An appropriate Order shall accompany this Memorandum Opinion.

Date: 19 August 2022
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge